case number 24-3729 United States of America v. Jayon Florence, oral argument not to exceed 15 minutes per side. Lori Riga, for the appellant, you may proceed. Thank you. Good morning. May it please the court, my name is Lori Riga. I'm here on behalf of my client, Mr. Jayon Florence, and I'd like to reserve four minutes for rebuttal time. Okay. A district court can apply the 2D1.1B12 maintaining a premises enhancement only when it finds a defendant, one, knowingly, two, maintains a premises, three, for purposes of drug manufacture and distribution. The district court here erred when it applied the enhancement to Mr. Florence's sentence without finding that second prong, the maintaining a premises prong. If the district court's findings were the standard, it would change the maintaining a premises enhancement to the using a premises enhancement, and it would effectively eviscerate that second prong, that maintaining a premises prong. Because the district court erred when it applied the enhancement to Mr. Florence's sentence, this court should vacate Mr. Florence's sentence and remand the case to the district court for resentencing. So the guideline commentary instructs a district court when it can apply or how to find the second maintaining a premises prong. You don't think there's some overlap between these elements sometimes? There can be overlap, certainly, Your Honor, but the important findings, the important facts that a district court has to find, for the most part, they depart ways. And I'll explain why in a moment. I'll explain why now, actually. Because the commentary to the guidelines tell us that to find that a defendant maintained a premises, the first thing that we look to is whether or not the defendant owned or rented, if there's some sort of possessory or legal interest. And absent that, which was the case here, then the district court looks to control of activity and control of authority. And how that has played out in this court's precedent is that this court has enunciated the test of de facto control. And so we look for something, you'll see the court's line of cases on this element of the enhancement, look for things that look like the defendant owned or had some possessory interest in the enhancement. For example, Judge Blomkatz, in your recent Tajwar case, we see that the defendant there paid the rent. His name was not on the lease, but he paid the rent on several occasions to the premises. And in the recent Drew case, you can see that the defendant, the court found, had a key to the premises, so therefore, of course, he had control of access. So he left a lot of drugs there, he left money there, ammunition. Is that indicative at all of de facto control? It has never been part of this court's precedent or the guideline commentary. It is a significant factor. It's figured prominently into this court's decisions when determining the purpose of prong or the purpose of element. And there you look to... Why can't you consider maintenance? In other words, if you leave a lot of money there, you have scales, you have baggies, you have other things. Why wouldn't that be? Well, that's somewhat what the district court found here, but it was erroneous according to the guidelines and the court's precedent. So what she found here on page 556 of the record is that he must have had access to the extent that he had freedom to come and go because he left his drugs and drug paraphernalia there. And then the second thing that she found, and I'm going to read this so that I don't misstate it. Are you disputing that that's circumstantial evidence that the district court could consider? She absolutely could consider that. I think the inference that Mr. Florence could access the home was a reasonable one based on the fact that the drugs and drug paraphernalia were there. And are you saying that the fact that he could access, as he pleased, this home, that that can go to the showing of control and authority for the second element? It cannot... Well, look, I will answer that by just stating what she found and then show why that wasn't what was found here and how it doesn't meet the standard. It does not meet the standard of what the guidelines and this court's precedent require. So she says that, and again this is a quote, he had some control over these premises to the extent that he left his drugs and paraphernalia there for drug trafficking purposes. And so I think he did have access and to some extent control. So she found control to the extent that he could access that, but that just doesn't speak to how he could access that, whether he had control of access, control of activity, to the level that he looks like he has de facto controlling possessory interest or someone who has a legal interest. That's well below what the standard requires. So she just applied the wrong set of, applied the inaccurate standard here to what this court requires according to its cases. So can I just give you a quick summary of what I understand the facts to be and you tell me if I'm wrong? He, on the fourth sale, he left from there, made the sale, returned there. During the execution of the warrant, he was there, correct? Correct. And they, when they entered the residence and found, they found drugs, guns, cash, body armor, and drug paraphernalia. And you're saying holistically taking all that into account, a district court could not conclude maintenance at that point? It could not conclude based on those facts de facto control because things, the government didn't meet its burden because of all the things that are missing here from those two limited points of control. The first thing is that we don't have any information how Mr. Florence was able to access the home. And you see it at page 555 of the record where the probation officer says we don't know if he had a key. We don't know. We don't have that information because the government never provided it. He came and went. He came and went, but it doesn't say how. And let me explain. Sure, but you could have a keypad. You could have all kinds of ways of entry. Right. And so this court, to that point, Your Honor, has repeatedly looked to how a defendant does come and go as evidence of control of access. For example, in the Brodnack's opinion, the court notes that the defendant was able to enter without knocking. In the Campbell opinion, the court notes the defendant was able to freely come and go from the premises. And in, again, the Drew opinion and the Tajwar opinion, the defendant had a key. So there had to be some kind of information about how. Couldn't he freely come and go here? There's no evidence. The government did not meet its burden here because there's no evidence of how he came and went. No. At page 525 of the record, you see when the district court consults the probation officer and says, well, what were anything? Do you have any information about how he was able to access the premises? The probation officer says that we don't have, because the government never gave us any indication of whether he had a key, what the agreement was with the family about how he was able to enter the home. So we see that there's just not that information that this court's precedent has looked to as important to establish access or control of access. Excuse me. And the second point of contact, the law, the presence, his presence at the point where law enforcement executed the search warrant, also does not further that idea of de facto control because we see at page 548 of the record that his aunt was also present. And that is not to implicate his aunt in any way in drug trafficking. She was not involved with that. But if you look to this court's precedent, the Campbell opinion, basically in that case, the court found meaningful that the defendant was alone on an air mattress in the living room when law enforcement conducted the search. And if you juxtapose that to the Whiteside case where Judge Batchelder found the enhancement did not apply, she notes that there were several people present at the time that law enforcement conducted the search. And so, therefore, that decreased the likelihood of de facto control. As part of your argument, I'm trying to understand that a whole lot of use can't get you to the maintained prompt because it doesn't look like, well, you kind of own this place. You don't pay rent. You don't control who gets to come and go. So even if you get to come and go and use this place as much as you want and you store, you know, 60 grand there, like a whole lot of use can't get you to maintain without some sort of… Right. Precisely that, Your Honor. Yes. So, and a couple of things. If we were to accept that, if that were the only factor we were to look to was that someone permitted a defendant to store his things there, then, again, we've eviscerated that second control element. We've now said that it doesn't matter. What about the inference that the district court made that, like, if you're going to have… if you're going to leave 60 grand somewhere, right, like, you're going to make sure you really wouldn't do that, not if you don't have some level of control over the area and not just, like, access to come and go, but, you know, make sure somebody else, you know, wouldn't get there to steal your money, for example. Well, and, again, it was reasonable for her to infer control to the limited extent that he was able to access that, but that's just not the standard here because the government did not provide enough information to meet the standard and… What do you do with the language from Johnson and Ventures that says, the more characteristics of a business that are present in the home, such as tools of the trade, and we use the example laboratory equipment, scales, guns, ammunition to protect the inventory and profits, include large quantities of cash from multiple employers or customers, the more likely it is that the property is being used for the purpose of prohibited drug activities and taken together that shows maintenance as well? So what do you do with that combination and how we did it in Johnson, which the probation officer then relies on in making his determination? Right, those all go to, those line of cases show that the defendant was able to, that I guess what the cases talk about, including Your Honor's Triplett case, where we talk about how much the home looks like a business, the drug trafficking business, and those certainly show purpose of, to some extent, I think to the extent that the district court found here, it can show some access to the extent that you can access the things that you left there, but it does not reach to the level of control that the guidelines requires, possessory interest or something akin to that. Can I ask you one more question? Sure. Your time's up, so I'll be brief, but I want to switch just to the standard review for a second. The, you note it's a mixed question that we've struggled with this and we have decisions all over the place. We have Taylor going one way on the maintenance prompt, Triplett going another way, arguably on a different prompt, and then we have a 9-0 Supreme Court decision in Buford that says focus, if there's, if it's factual nuance, like here we do clear error, if we're disputing legal things, if it's a mixed question, we do de novo. You don't answer this question, you just indicate the tension in your brief, but then kind of just say clear error for facts and de novo for law. So what do we do when there's a factual nuance? Well, let me clarify that, Your Honor. In this case, the district court misapplied the legal standard for de facto control for that second prompt, maintaining a premises. So what she found when she said control to- When you switch from she misapplied to what she found, right? You're switching from law to fact, or am I misunderstanding? Perhaps I'm misspeaking. What she applied was a control to some extent test. That is not the standard that the guidelines commentary and that this court has enunciated. So just so I'm clear, you're saying all this discussion we just had about the facts, kind of irrelevant, what matters is she got the test wrong. Well, it is relevant to, Your Honors, to a de novo review, right? We'd have to talk about the facts and determine whether or not the government has met its burden in any event. But, yes, I'm saying that what the district court did here, all judges on this court would agree, is de novo review because she found the wrong standard. She applied the wrong standard of what the maintaining a premises element requires. Okay. Yeah. It'll be closer to one. Yeah. So you didn't spend any time on what was your lead argument in the brief. So you didn't spend any time on the search. But so you know this case, Sanders, right? It's en bas. Yes. So we spend a lot of time on our en bas decisions. It's hard to get 90 people to agree to something. Right. You hear the term super precedent sometimes. I think our en bas cases basically are super precedent. The Sanders case lines up, just in my mind, very, very closely with your case on probable cause. We say there are evidence that one of these residents engaged in a drug transaction and returns to the resident plainly demonstrates sufficient access to the location. And we want to say this evidence alone would end the matter. And just the far described effects of this case. So how is Sanders not controlling on probable cause? So I believe we cited that and distinguished it to the extent that we see in Sanders there are two actual controlled by's observed of coming and going. In this case, we only have the one controlled by. Only the one. I'm sorry. We only saw coming or going for the second by. But we say one. We say right here one alone in our en bas decisions. Right. So we. We have one here. Your Honor, the only thing that we would say is just that limited portion, that limited controlled by, along with just the surveillance, the sort of vague surveillance that took place, that it's just not sufficient to show probable cause. Okay. Thank you. Thank you. May it please the court. Colleen Egan for the United States. I have three arguments to make. I know the focus has been on the maintaining. So very briefly, I'd argue that the district court, they correctly denied the motion to suppress. Found probable cause. The defendant was a drug dealer engaged in ongoing drug activity. And they conducted surveillance, creating a nexus to the residence when the defendant went from the residence to the drug deal and then directly back to the residence again. Further, secondly, the law enforcement reasonably relied on that search warrant that was given by a neutral detached magistrate. And it was not a bare bones affidavit. It's clearly stated in the affidavit. It details multiple controlled bys with that defendant as well as surveillance of that defendant. And thirdly and lastly, the court, the district court correctly applied the maintaining enhancement sentencing. Based on the defendant's activities, the surveillance conducted, which the court had in its facts, the search warrant itself as well as the defendant being present at the residence during execution of search warrant, and then the fact of all the items and the variety of items that were found at the residence. Specifically as to that third argument, the maintaining, since that has been the focus of prior argument, the facts of this case can't be looked at. Before you get to the facts, can you address the argument that the district court applied the wrong standard? I don't believe that district court applied the wrong standard. The facts have to be applied to each one of the elements. They did consider, the court did consider each of the elements when they considered the application of the maintaining enhancement. And that is the standard for them to look at each of the elements and that they have to be proved beyond a preponderance of the evidence. The government did prove beyond, they did prove by preponderance of the evidence each element of that maintaining. The defendant's activities, drug activities at that residence, his possession was knowingly, he admitted to each of the items found at the residence. The defendant, and into the third element, before we get to the second element, the facts of it, the facts of everything that was found of the defendant's activities showed that his purpose to that house was solely to maintain it. His own argument that he did not reside at that house lies in the face of that house being anything more than a place for drug sales and distribution. So then as to the second element of the test, the purpose, sorry, to open or maintain any place, I think case law is on the government's side here. What about the exact language that you're finding on the other side, Grace, is that the district court found like controlled to the extent he can come and go, but that the guidelines in our case law are looking for more de facto control really over like authority of the premises, like more akin to someone who rents or owns or pays rent or is on a lease or something like that. And that finding control only to the extent you can come and go somewhere isn't enough. So the case law shows that when a defendant rents, that is very easy to then have the second element proved by preponderance of the evidence. Unfortunately, that is not often the case with drug dealers. They often have residences in other people's names or use residences. My question is, do you need to find more than control to the extent you can come and go? If you don't have a rent or if you don't have other things, we know that that's not here. Do you need to find more than control to the extent that you can come and go? I think Hernandez is relevant in that case. In that case, the defendant utilized a warehouse on three separate occasions in order to get shipments of marijuana. The warehouse would have been used by other people in between his use of that. He did not have he did not have some rental agreement or anything to that extent. But the court said in that the fact that others could have used the warehouse in between three shipments is irrelevant. What matters is instead is Hernandez's relationship to the site at the time he used it. Informal dominion over a site is enough, even if it does not come with the formal right to exclude or right to control. Further, Broadnax says that evidence of maintaining of maintenance can be shown by the facts showing control, duration, acquisition of the site, renting or furnishing the site, supervising, protecting, supplying food to those on the site, maintaining continuity. In that, I believe a the continuity, the fact that he was seen coming and going freely six days later is found at the same residence with the during the execution of search warrant. But also the protecting element here is relevant. The defendant had nine firearms at this house, not just one. He had nine firearms, 300 rounds of ammunition. He had essentially an arsenal to protect his business at this residence. He had body armor as well. So these aren't small items. The the white side case that defense counsel mentions, there is there was a lot of discrepancy as to who actually would have been running that house. He was acquitted on one of the distribution counts in that case. So there there was a lot of discrepancies between the evidence. And in this case, we don't have that. I'd say this is closer to the triplet case in that. The in the triplet case, the residence was leased by the girlfriend. The buys were conducted at the house, but the buys weren't just conducted by the defendant, by triplet. There were other people that conducted those buys at the house. And then they had two kilograms of drugs found at the house, approximately one firearm and approximately fifty six hundred dollars. How do you deal with the white side? That seems pretty similar. So as I as I briefly mentioned, in white side, there was conflicting trial evidence as to the counts. There was conflicting evidence as to who actually opened the doors. And so in that case, in this case, we don't have that conflicting evidence. There's no assertions that somebody else opened the door for Florence, for the defendant. There's no assertions that he had to get permission to come into the house. The evidence was that there's just really nothing on any of that. Right. And isn't it your burden? So he left the house like on his own after prior to leaving the house in a recorded call in a call with the undercover officer that he was making the buy with. He told that officer, I have to get dressed first. And then he left the house on his own, got in his car, went to the drug deal, came back and entered. Although I still don't know how he entered. That is accurate. Your Honor, that is accurate. And then he's still at he's at the residence when they execute the search warrant. The items in the house as well that he claimed, the nine firearms, 300 rounds of ammunition, the body armor, the money counter, the approximately six, almost $60,000 in U.S. currency. The large amounts of drugs, the scale, digital scales and the pill press. Those that all is not just your items to protect your business, your items to then manufacture to into your financial item. Everything for your business is right there. And these aren't items you can just put in a book bag and leave. So he's clearly not a guest. He's clearly not just coming and going from this residence, given the amount and the variety of those items. And I think that is relevant. This is more items than we're seeing in some of the other cases that are at issue. For instance, triplet. These are more items and a larger variety of items than we're typically seeing. It is more in line with the entirety of this drug trafficking business was found at this location. The defendant was coming and going, seen coming and going from that. The defendant was maintaining for that purpose. He was protecting that business. He was maintaining that business at that residence. Thank you, counsel. Thank you. So a couple of points, Your Honor, that I'd like to make. First of all, again, regardless of the amount of drugs or drug paraphernalia that were located there, the court and the guidelines require something more. It can't be the maintaining a premises enhancement cannot be merely that somebody allowed you to store your drugs there. Maintaining a premises means there is another requirement, which is you have, the defendant has something that looks like legal or possessory interest. That looks like de facto control. So in the Hernandez case, yes, on those three occasions, that defendant had control of who came and went on that premises in the warehouse. There were three instances of drug buys on the warehouse. There was no question that on those three occasions, the defendant there had control of access and he controlled the activities that were going on. And the issue there was what about all those times in between? The court said those times in between don't matter. The Broadnecks case that my colleague also mentioned is, even though it's against, it goes against the defendant, I think is one of our best cases, because it shows the panoply of facts that this court finds important. Not only just the fact that I said previously that the defendant was seen coming and going without knocking, but also in that case, he paid some of the utilities for the premises and then he was there repeatedly. And here again, Your Honor, as you said, that there's no indication. The government just hasn't met its burden about how the defendant was able to come and go. And I should also mention that if you look at paragraph 46 of the PSR, it's undisputed. And even at the sentencing hearing, undisputed. Mr. Florence at all times lived with his great grandmother in a different place. This was never at any point his residence. The guns that my colleague mentioned. You know, he's changing there. He's coordinating drug deals from there. We know he's texting messages about the controlled supplies from there. It's doing a lot more than just leaving some stuff. Well, Your Honor, I have three responses to that. First of all, as I said a moment ago, he never lived there. We know it's an undisputed fact that he never lived there. The second fact I would raise is that we're talking about January in Cleveland. So when he says, I'll be there in a minute, I need to get dressed, there's some ambiguity as to whether he means I'm getting dressed for the day or I'm getting dressed for the weather. So that doesn't necessarily indicate that he was there overnight. But even if he were, what we have, what the government has shown us, is one limited occasion of him staying overnight. And this court's precedent, specifically in Hernandez, says that the defendant needs to be something more than a casual visitor. So that one night wouldn't establish anything more than him being a casual visitor. And I would just, again, emphasize to the court, unless the court has more questions, that the district court here applied the wrong legal standard. And because she applied the wrong legal standard, the government has not carried its burden here. And the enhancement should not be applied. And again, emphasize that if we were to follow the district court standard, if the district court findings were the standard, we've now eviscerated that second requirement of the enhancement. Thank you. Thank you, counsel. The case will be submitted. We appreciate your thoughtful arguments and briefs on this interesting case.